**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────────

TRAVIS L.,

                                          Plaintiff,

         v.

                                          No. 3:19-CV-663
                                                  (CFH)
ANDREW SAUL,
Commissioner of Social Security,

                                     Defendant.

─────────────────────────────────────────

**APPEARANCES:**                         **OF COUNSEL:**

Lachman, Gorton Law Firm          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration        TIMOTHY SEAN BOLEN, ESQ.
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Travis L.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking to

review the determination of the Commissioner of Social Security ("the Commissioner").

─────────────────

[1]  The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 9.

[2]  In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by his first name and last initial.

That determination denied his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act.  See Dkt. No. 1.  Plaintiff moves for, inter alia, reversal and remand for further administrative proceedings, while the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 14, 17.  For the reasons that follow, the determination of the Commissioner is reversed, the Commissioner's motion is denied, and plaintiff's motion for judgment on the pleadings is granted to the extent that is seeks reversal and remand for further administrative proceedings.

## I.  Background[3]

### A.  Factual Background

Plaintiff was born on September 9, 1988 and has a high school education.  See T. 28-30.  Plaintiff attended special education classes and his final two years of high school were spent in vocational training programs.  See T. 29, 145, 247.  Plaintiff's employment history consists of having worked for limited periods of time as a dishwasher and a kitchen cleaner.  See T. 30-33, 62, 134-39, 146, 163-72.

Plaintiff testified that he suffers from a severe astigmatism, which has prevented him from taking and passing his driver's test.  See T. 35-36, 47-48, 50, 211-40, 286-90, 322-28.  In addition, plaintiff was born with what he describes as an "underdeveloped cerebellum," resulting in his poor motor function and balance issues.  See T. 36-37; see

---

[3]  References to the administrative transcript will be cited as "T" and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  See Dkt. No. 11.  All other citations will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers that are utilized in the document header, rather than the pagination of the original documents.

also id. at 36 ("I stumble around when I walk.  I can't walk in a straight line.").  Plaintiff also suffers from Gordon Holmes syndrome[4]—which he describes as being characterized by low testosterone—and results in low energy, gynecomastia, and sterilization.  See T. 37-39.  Plaintiff reported increased energy levels as a result of undergoing deep muscle injections for that condition.  See T. 37-38, 49, 305-21.

Plaintiff lives in a house with his parents and younger sister.  See T. 34-35, 45-46.  He is able to cook simple meals, do his own laundry, take care of his pets, and clean his room without assistance.  See T. 41-43, 46-47.  Plaintiff described his typical day as follows:

> Wake up, get on the computer, play my computer game for
> about an hour or two or three at the most.  Then if need be,
> take care of the dog and then I just watch TV shows or
> Netflix or a movie until [my family returns] . . . around five.

T. 46; see also T. 152062.  Plaintiff leaves his home approximately twice per week to visit friends to "[h]ang out, play cards, or card games or watch a movie."  See T. 44-45.

## B.  Relevant Medical Background

### 1.  Physician Assistant Joseph Brunt

At the hearing, plaintiff testified that he is seen once per year by Physician Assistant Joseph Brunt, but the medical records in the administrative transcript reflect that it is somewhat less frequently.  See T. 49, 241-42 (8/4/15 office visit), 243-44 (12/17/13 office visit), 296-300 (12/4/17 office visit), 301-03 (5/7/18 questionnaire).

---

[4] "Gordon Holmes syndrome is a rare condition characterized by reproductive and neurological problems."  U.S. Nat'l Lib. of Med., *Gordon Holmes Syndrome*, https://ghr.nlm.nih.gov/condition/gordon-holmes-syndrome (last visited Sept. 18, 2020).  The condition is occasionally also referred to as, inter alia, "cerebellar ataxia and hypogonadotropic hypogonadism."  Id.

According to P.A. Brunt, plaintiff suffers from Gordon-Holmes syndrome, hypogonadism, and a learning disability, but those conditions would not result in plaintiff being off-task or absent from work.  <u>See</u> T. 303.  In a letter dated May 7, 2018, P.A. Brunt stated:

> [Plaintiff] came in the office today for follow-up appointment.  He did bring a copy of the paperwork . . . regarding his application for Social Security benefits.  The form []he provided mainly deals with patient limitations that are due to pain.  I feel the form does not apply to this patient.  He does have Gordon-Holmes syndrome[, w]hich does have [an] associated learning disability.
>
> [Plaintiff] also takes weekly testosterone injections due to his hypogonadism.  I do support [plaintiff's] application for Social Security disability benefits.

T. 302.

### 2.  Gilbert Jenouri, M.D.

On July 7, 2016, plaintiff was examined by consultative examiner Gilbert Jenouri M.D.  <u>See</u> T. 280-285.  At that examination, plaintiff reported that he experiences balance difficulties, was diagnosed as having an underdeveloped cerebellum, and "found to have difficulties with fatigue and decreased strength associated with low testosterone levels."  T. 280.

Plaintiff's physical examination was largely normal, but Dr. Jenouri did observe that plaintiff was unable to walk on his heels and toes due to difficulties with his balance. <u>See</u> T. 280-81; <u>see also</u> T. 282 ("abnormal tandem walk and heel-to-toe testing").  Dr. Jenouri opined that plaintiff suffered from, <u>inter alia</u>, an underdeveloped cerebellum, imbalance, hypotestosteronism, and fatigue.  <u>See</u> T. 282.  Dr. Jenouri provided a

medical source statement which reflected that plaintiff was restricted to activities in a seated position and restricted from driving and operating heavy machinery, as well as activities that require fine visual acuity.  See T. 282.

### 3.  T. Inman-Dundon

In August 2016, non-examining state agency psychologist, T. Inman-Dundon, Ph.D., completed an initial level psychiatric review technique of plaintiff.  See T. 51-63. Dr. Inman-Dundon noted that plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others, but otherwise no further limitations  See T. 59-61.  Dr. Inman-Dundon concluded that plaintiff was capable of performing the basic mental demands of unskilled work, which was "consistent with the [plaintiff's] longitudinal medical record and reported activities of daily living."  T. 61.

### 4.  Amanda Slowik, Psy.D.

On July 7, 2016, plaintiff was examined by consultative examiner Amanda Slowik, Psy.D.  See T. 273-79.  Plaintiff presented as cooperative, exhibited adequate social skills, questionable personal grooming skills, adequate expressive and receptive language skills, normal thought process, euthymic mood, appropriate affect, moderate to markedly impaired attention and concentration skills due to limited intellectual functioning, intact memory skills, intellectual functioning in the borderline range, and fair insight and judgment.  See T. 274-75.  Dr. Slowik observed that, based upon his

previous testing, plaintiff's intellectual functioning was in the borderline range and that

his "[g]eneral fund of information was somewhat limited." T. 275.

In her medical source statement, Dr. Slowik opined that although the results of

plaintiff's evaluation appeared to be consistent with cognitive problems, "this does not

appear to be significant enough to interfere with the [plaintiff's] ability to function on a

daily basis." See T. 276.  Dr. Slowik diagnosed plaintiff with, inter alia, "[b]orderline

intellectual functioning."  T. 276.


### 5.  Adam R. Krantweiss, Ph.D.

On November 10, 2015, plaintiff was examined by consultative examiner Adam

R. Krantweiss, Ph.D. "to determine his level of intellectual functioning and academic

achievement."  T. 247-253.  At the examination, Dr. Krantweiss administered the

Wechsler Adult Intelligence Scale,[5] which indicated that plaintiff had a verbal

comprehension score of 89 (low-average to average), perceptual reasoning score of 90

(low-average to average), a working memory score of 74 (borderline), and a processing

speed score of 65 (extremely low to borderline).  See T. 248-50.  Although Dr.

Krantweiss was unable to interpret plaintiff's full-scale IQ score, he opined that plaintiff's

general ability index was 88, which fell within the low-average to average range.  See T.

248.

---

[5] The Wechsler Adult Intelligence Scale "'is the most commonly used adult IQ test for measuring intelligence.'"  Randolph v. Berryhill, No. 17-CV-6711 (BCM), 2019 WL 1434301, at *11 n.11 (S.D.N.Y. Mar. 29, 2019) (citations omitted).  The current version of the test returns scores on four separate indices of adult intelligence—verbal comprehension, perceptual reasoning, working memory, processing speed— as well as a full-scale IQ score, all normed on 100.  See id.  Scores of 90-109 are considered "average," scores of 80-89 are termed "low average," scores of 71-79 denote "borderline intellectual functioning."  Id.

In addition, Dr. Krantweiss administered the Wide Range Achievement Test,[6] which showed that plaintiff exhibited "low to below average" skills in word reading, sentence comprehension, and reading composite.  T. 250.  The results also reflected that plaintiff exhibited "lower extreme to low" skills in spelling and math computation.  T. 250.  Dr. Krantweiss described plaintiff's scores as being commensurate as that of a third grader.  See T. 251.

Dr. Krantweiss noted that plaintiff exhibited limited spelling and math skills, and opined that these skills would prevent plaintiff from "functioning optimally" in a work setting.  See  T. 251.  He opined, however, that plaintiff "could function in some work settings, but limitations would preclude him working competitively across a wide variety of work-related settings."  T. 252.

## C.  Procedural Background

On February 17, 2016, plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, in which he alleged a disability onset date of February 17, 2016.[7]  See T. 10, 33-34, 124-33.  Plaintiff's application was initially denied by the Commissioner on August 16, 2016.  T. 65-71.  Following plaintiff's request for a hearing, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Bruce S. Fein on May 22, 2018.  See T. 24-50.

---

[6]  The Wide Range Academic Test "is an academic skills assessment which measures reading skills, math skills, spelling, and comprehension."  Jones v. Colvin, No. 4:15-CV-00388 (MM), 2016 WL 7735259, at *13 n.26 (S.D. Tex. Sept. 29, 2016).

[7]  Plaintiff previously filed three Title XVI applications.  See T. 52, 141.  The first was filed on February 19, 2009 and denied April 30, 2009; the second claim was filed on February 4, 2011 and denied on June 9, 2011; and the third was filed on October 12, 2011 and denied on January 17, 2012.  See T. 52, 141.

On August 30, 2018, ALJ Fein rendered an unfavorable decision and plaintiff filed a timely appeal.  See T. 7-23, 123; see also T. 5-6 (acknowledging plaintiff's request for review).  On April 10, 2019, the Appeals Council denied plaintiff's request for review, making those findings the final determination of the Commissioner.  See T. 1-6. This action was thereafter commenced on June 5, 2019.  See Dkt. No. 1.

### D.  The ALJ's Decision

Applying the five-step sequential analysis, the ALJ first concluded that plaintiff had not engaged in substantial gainful activity since February 17, 2016.  See T. 12 (citing 20 C.F.R. § 416.971 et seq.).  ALJ Fein then determined that plaintiff suffers from several severe impairments, including Gordon Holmes syndrome, a learning disorder, and cannabis abuse, in remission.  See T. 12 (citing 20 C.F.R. § 416.920(c)).  ALJ Fein also determined that plaintiff suffers from a number of non-severe impairments— hypogonadism, gynecomastia, congenital nystagmus, bilateral posterior subcapsular polar age-related cataracts, and obesity—but that those non-severe impairments do not cause plaintiff significant functional limitations.  See T. 12.

After specifically considering Listing 12.11 (Neurodevelopmental Disorders), ALJ Fein concluded that plaintiff does not have an impairment—or combination of impairments—that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See T. 13-14.  Proceeding to the next step, the ALJ held that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> he can only occasional[ly] engage in balancing; should avoid
> concentrated exposure to unprotected heights and
> hazardous machinery; should avoid operational control of
> moving machinery; is limited to occupations requiring only
> occasional far acuity; is limited to simple, routine, and
> repetitive tasks; and is limited to a low stress job defined as
> only occasional decision making, occasional changes in the
> work setting, and occasional judgment required.

T. 14-18.  In so holding, ALJ Fein afforded the opinions of P.A. Brunt, Dr. Jenouri, and

Dr. Inman-Dundon "great weight" and the opinions of Dr. Slowik and Dr. Krantweiss

"partial weight."  T. 17-18.

Proceeding to step five, the ALJ determined that when considering plaintiff's age,

education, work experience, as well as his RFC—in conjunction with the Medical-

Vocational Guidelines contained within 20 C.F.R. Part 404, Subpart P, Appendix 2

(commonly called "the Grids" or the "Grid")—plaintiff is capable of performing a

significant number of jobs in the national economy.  See T. 18 (citing 20 C.F.R. §§

416.969, 416.969a)).  ALJ Fein noted that although plaintiff exhibited postural,

environmental, visual, and mental limitations, those limitations had little or no effect on

the occupational base of unskilled work at all exertional levels and, as a result, "[a]

finding of 'not disabled' is therefore appropriate under the framework of section 204.00

in the [Grids]"  T. 18-19 (citing Social Security Ruling ("SSR") 96-9p, Policy

Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work—

Implications of a Residual Functional Capacity for Less Than Sedentary Work ("SSR

96-9p"), 1996 WL 374185 (S.S.A. July 2, 1996); SSR 85-15, The Medical-Vocational

Rules as a Framework for Evaluating Solely Nonexertional Impairments ("SSR 85-15"),

1985 WL 56857, at *4 (S.S.A. Jan. 1, 1985)).  The ALJ therefore held that plaintiff "has

not been under a disability, as defined in the Social Security Act, since February 17, 2016, the date the application was filed."[8]  T. 19 (citing 20 C.F.R. § 416.920(g)).

## E.  The Arguments of the Parties

Plaintiff advances multiple arguments in support of reversal.  See Dkt. Nos. 14, 18.  Plaintiff argues that (1) the physical portions of plaintiff's RFC is based upon the ALJ's lay interpretation of bare medical evidence and is otherwise unsupported by medical opinion; (2) the ALJ improperly substituted his lay judgment for the undisputed medical opinion of Dr. Jenouri; (3) the ALJ failed to properly account for plaintiff's limitations with respect to attention, concentration, work-pace, memory, and limited spelling and math skills; (4) the ALJ made unsupported factual conclusions; and (5) the ALJ's step five determination is not supported by substantial evidence.  See Dkt. Nos. 14, 18.

In response, the Commissioner argues that (1) the physical portions of the RFC are supported by substantial evidence; (2) substantial evidence supports the ALJ's decision to partially discount Dr. Jenouri's opinion; (3) substantial evidence supports the ALJ's mental RFC assessment and weighing of the opinion evidence related to those mental impairments; (4) there is no prejudice to plaintiff stemming from the ALJ's alleged "unsupported factual conclusions"; and (5) the ALJ's step five determination is supported by substantial evidence.  See Dkt. No. 17.

---

[8]  The earliest month for which benefits can be awarded is the month following the month the plaintiff files his or application for benefits.  See 20 C.F.R. § 416.335.  Thus, the relevant period commences on the application date.  See Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 n.1 (2d Cir. 2012) (summary order).

## II.  Legal Standards

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the determination of the Commissioner will only be reversed if the correct legal standards were not applied, or the determination was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Substantial evidence is "more than a mere scintilla," which means that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). Under this standard, "once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'"  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir.1994)).  Substantial evidence is "a very deferential standard of review- even more so than the 'clearly erroneous' standard."  Brault, 683 F.3d at 448 (quoting Dickinson v. Zurko, 527 U.S. 150, 153 (1999)).

Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the

correct legal standards were applied—and the ALJ's finding is supported by substantial evidence—the determination must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B.  Determination of Disability[9]

"Every individual who is under a disability shall be entitled to a disability . . . benefit[.]" 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

---

[9]  The analysis of supplemental security income benefits under Title XVI parallels the statutory and regulatory framework applicable to disability insurance benefits claims under Title II in relevant part.  See Franki L. v. Comm'r of Soc. Sec., No. 6:18-CV-741 (GLS), 2019 WL 4736469, at *1 n.2 (N.D.N.Y. Sept. 27, 2019) (citing Barnhart v. Thomas, 540 U.S. 20, 24 (2003)).

(S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis to determine whether an individual is entitled to disability benefits.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  In particular,

> First, the [Commissioner] considers whether the [plaintiff] is currently engaged in substantial gainful activity.
>
> If [the plaintiff] is not, the [Commissioner] next considers whether [he or she] has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the [plaintiff] suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the [plaintiff] has an impairment which is listed in Appendix 1 of the regulations.  If the [plaintiff] has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a [plaintiff] who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the [plaintiff] does not have a listed impairment, the fourth inquiry is whether, despite the [plaintiff]'s severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the [plaintiff] is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the [plaintiff] could perform.

<u>Berry</u>, 675 F.2d at 467 (2d Cir. 1982) (spacing added).  At the first four steps of the analysis, the plaintiff bears the initial burden of proof.  <u>See</u> <u>DeChirico v. Callahan</u>, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing <u>Berry</u>, 675 F.2d at 467).  If the inquiry progresses to the fifth step, then the burden shifts to the Commissioner to prove that the plaintiff is

still able to engage in gainful employment somewhere.  See DeChirico, 134 F.3d at

1180 (citing Berry, 675 F.2d at 467).

### III.  Legal Analysis

#### A.  The RFC

RFC is defined as "'what an individual can still do despite his or her limitations[.]'"

Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel,

198 F.3d 45, 52 (2d Cir. 1999)).  "'Ordinarily, RFC is the individual's maximum

remaining ability to do sustained work activities in an ordinary work setting on a regular

and continuing basis.'"  Melville, 198 F.3d at 52 (quoting SSR 96-8p, Policy

Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial

Claims ("SSR 96-8p")), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  A "regular and

continuing basis" refers to eight hours a day, for five days a week, or an equivalent work

schedule.  Balles v. Astrue, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan.

23, 2013) (citing Melville, 198 F.3d at 52).

To properly ascertain a plaintiff's RFC, the ALJ must assess the plaintiff's

exertional and nonexertional capacity. [10]  See DiVetro v. Comm'r of Soc. Sec., No. 5:05-

CV-830 (GLS/DEP), 2008 WL 3930032, at *11 (N.D.N.Y. Aug. 21, 2008).  The ALJ

should consider objective medical facts, diagnoses, and medical opinions based on

such facts, as well as the plaintiff's subjective symptoms, including pain and

---

[10]  "Exertional capacity addresses an individual's limitations and restrictions of physical strength" and includes "[s]itting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-9p, 1996 WL 374185, at *5.  "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional" and includes "mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling."  See id.

descriptions of other limitations.  See 20 C.F.R. §§ 404.1545, 416.945; see also Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010); Martone, 70 F. Supp. 2d at 150 (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *6).

In this case, ALJ Fein determined that plaintiff retains the RFC—despite his impairments—to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> he can only occasional[ly] engage in balancing; should avoid concentrated exposure to unprotected heights and hazardous machinery; should avoid operational control of moving machinery; is limited to occupations requiring only occasional far acuity; is limited to simple, routine, and repetitive tasks; and is limited to a low stress job defined as only occasional decision making, occasional changes in the work setting, and occasional judgment required.

T. 14-18.  In arriving at this RFC, the only opinion evidence considered by the ALJ was Dr. Jenouri by virtue of the fact that he was the only medical provider to opine on plaintiff's physical abilities.  See T. 282.  At the July 7, 2016 examination, Dr. Jenouri noted that plaintiff reported "having difficulties with his balance" and "difficulties with walking due to imbalance since childhood." T. 280.  Although Dr. Jenouri observed a normal gait, he also observed that plaintiff was "[u]nable to walk on heels and toes

without difficulty due to balance," T. 281, and "abnormal tandem walk and heel-to-toe

testing," T. 282.  Dr. Jenouri then provided the following medical source statement:

> [Plaintiff] is restricted to activities in the seated position.
> [Plaintiff] is restricted from driving and operating heavy
> machinery or activities requiring fine visual acuity.

T. 282.

In evaluating the opinion of Dr. Jenouri, ALJ Fein generally afforded it "great

weight." T. 17.  Regarding Dr. Jenouri's opinion that plaintiff was "restricted to activities

in the seated position" ALJ Fein discounted that portion of the opinion—stating that he

"d[id] not give [it] greater weight"—because that sitting limitation was "vague and does

not outline [plaintiff's] specific function-by-function abilities" and because the limitation

was "inconsistent with [plaintiff's] lack of standing or walking deficits during most

examinations and varied activities of daily living, including his ability to walk places,

hike, fish, and grocery shop."  T. 17.

As an initial matter, the undersigned acknowledges that the ALJ's adoption of

only a portion of Dr. Jenouri's opinion—while rejecting another portion of that opinion—

was not in and of itself inherently improper.  Indeed, "[a]lthough the ALJ's conclusion

may not perfectly correspond with any of the opinions of medical sources cited in his

decision, he was entitled to weigh all of the evidence available to make an RFC finding

that was consistent with the record as a whole."  Matta, 508 F. App'x at 56; see Cichocki

v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of

evidence that contributed to the decision, so long as the record 'permits [the reviewing]

to glean the rationale of an ALJ's decision.'" (quoting Mongeur v. Heckler, 722 F.2d

1033, 1040 (2d Cir. 1983))).  At the same time, however, "[a]n ALJ is prohibited from

'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.'" Quinto v. Berryhill, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017).

As an examining medical consultant, Dr. Jenouri is qualified as an expert in the field of social security disability.  See Danielle R. v. Comm'r of Soc. Sec., No. 5:19-CV-538 (ATB), 2020 WL 2062138, at *11 (N.D.N.Y. Apr. 29, 2020).  His opinion, however, is not entitled to any special deference or weight, and the ALJ must consider the following factors in assessing his opinion:

(1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable,
(2) the opinion's supportability,
(3) the opinion's consistency with the record as a whole,
(4) the source's specialization, if any, and
(5) other factors, such as the source's knowledge of disability programs and familiarity with the case record

See Bump v. Comm'r of Soc. Sec., No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *3 (N.D.N.Y. Oct. 28, 2016).  To the extent that Dr. Jenouri failed to formulate a function-by-function assessment in his opinion, this failure is not among the factors considered when discounting an opinion.  Although it is true that the regulations include a catchall for all "other factors" that "tend to support or contradict the medical opinion," 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6), it is difficult to see how a doctor's failure to formulate an opinion as a function-by-function assessment is somehow indicative of the reliability of that doctor's opinion.  See, e.g., Stango v. Colvin, No. 3:14-CV-1007 (MAS), 2016 WL 3369612, at *11 (D. Conn. June 17, 2016) (noting that there is "no authority" that a medical opinion be cast aside because it does not contain a function-by-function

17

assessment especially because, under Second Circuit precedent, not even an ALJ has an "obligation in every instance to perform a function-by-function analysis"); Rodriguez v. Colvin, No. 15-CV-0297 (KPF), 2016 WL 1573464, at *13 (S.D.N.Y. Apr. 18, 2016).

To the extent that ALJ Fein discounted Dr. Jenouri's opinion as "vague," the undersigned agrees with that assessment.  While Dr. Jenouri restricts plaintiff "to activities in a seated position," he did not otherwise elaborate "nor did he particularly state that [plaintiff] can sit for an entire workday."  DiVetro, 2008 WL 3930032, at *12. As a result, it is not clear whether the restriction to seated activities necessarily implies that plaintiff is unable to stand or walk during the workday.  If, for example, Dr. Jenouri believed that plaintiff is unable to stand for up to two hours per day, this would result in the erosion of the occupational base and, consequently, the ability to perform sedentary work.[11]  See Milhomme v. Comm'r of Soc. Sec., No. 3:17-CV-01369 (JAM), 2018 WL 4562347, at *3 (D. Conn. Sept. 24, 2018) ("Accordingly, any limitation in plaintiff's ability to walk/sit may significantly erode the occupational base and consequently her ability to perform sedentary work."); Spain v. Astrue, No. 07-CV-1776 (NGG), 2009 WL 4110294,

---

[11]  Although it is true, as the Commissioner notes, that a limitation to "seated activities" is not necessarily inconsistent with a limitation to sedentary work, see Dkt. No. 17 at 7-8, "a certain amount of walking and standing is often necessary in carrying out job duties" that are associated with sedentary work.  SSR 96-9p, 1996 WL 374185, at *3.  To that end, SSR 96-9p states, in relevant part, that:

> *Standing and walking:* The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8–hour workday.  If an individual can stand and walk for a total of slightly less than 2 hours per 8–hour workday, this, by itself, would not cause the occupational base to be significantly eroded.  *Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly.*  For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

Id. at 6 (second emphasis added).

18

at *6 (E.D.N.Y. Nov. 25, 2009) ("[T]he court finds that [the plaintiff's] ability to walk or stand for only one to two hours a day significantly erodes the occupational base.").

It is not the Court's role to engage in speculation with respect to the contours of Dr. Jenouri's opinion or plaintiff's alleged exertional limitations.  While the undersigned does agree that plaintiff's limitation to "activities in the seated position" is vague, it was nonetheless the <u>only</u> opinion in the medical record that addressed plaintiff's exertional limitations.  In rejecting that portion of the opinion, the ALJ failed to seek clarification from Dr. Jenouri or otherwise order a new consultative examination.  In that respect, this left the ALJ's RFC assessment unsupported by any medical opinion evidence.

The Second Circuit has held that when a physician's opinion is not contradicted by another medical opinion, there "must be overwhelmingly compelling evidence in order to overcome it."  <u>Giddings v. Astrue</u>, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order) (citing <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008)); <u>see</u> <u>Flynn v. Comm'r of Soc. Sec.</u>, 729 F. App'x 119, 121 (2d Cir. July 6, 2018) (summary order) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.").  In <u>Giddings</u>, the ALJ rejected "the *only* medical opinion . . . that explicitly addresses the effect of [the plaintiff's] impairments on [his] ability to work."  <u>Giddings</u>, 333 F. App'x at 652 (emphasis in original).  The Second Circuit determined that although the ALJ stated that the sole opinion was "based upon a single examination, is not well supported by medical evidence, and is inconsistent with the [plaintiff]'s reports of her daily activities," this

rationale "failed to provide the [overwhelming] compelling critique needed to overcome the uncontradicted medical opinion of [the consultative examiner]." Id. at 652.

To be sure, the medical evidence in the current record, particularly with respect to plaintiff's exertional limitations, was extremely sparse. It cannot be said that Dr. Jenouri's opinion "was 'but one piece of a voluminous medical history and record.'" Dkt. No. 17 at 10 (quoting Alvarez v. Colvin, No. 15-CV-6193 (JWF), 2016 WL 5791205, at *9 (W.D.N.Y. Sept. 30 2016)). Given this paucity of opinion evidence, the undersigned is unable to conclude that the reasoning provided for rejecting portions of plaintiff's exertional limits was sufficiently compelling to overcome the fact that it was the only medical opinion contained in the record regarding plaintiff's functional restrictions. See Giddings, 333 F. App'x at 652 (quoting Burgess, 537 F.3d at 129). It is certainly true that an ALJ may base an RFC assessment on evidence other than medical opinions—such as treatment notes and activities of daily living—but the instant record simply cannot be characterized as "overwhelming compelling" Flynn, 729 F. App'x at 12. For example, one of the primary reasons for rejecting Dr. Jenouri's opinion was plaintiff's ability to engage in certain activities of daily living, "including his ability to walk places, hike, fish, and grocery shop."[12] T. 17. Although an ALJ is required to consider a plaintiff's activities of daily living, "'[s]uch activities do not by themselves contradict allegations of disability[.]'" Knighton v. Astrue, 861 F. Supp. 2d 59, 69 (N.D.N.Y. 2012); see Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("a [plaintif] need not be an invalid to be found disabled"). The undersigned is not persuaded that plaintiff's reported

---

[12] In addition, while it is true that plaintiff exhibited no standing and walking deficits in most examinations, see, e.g., T. 307 ("normal gait"), there are also several examinations where plaintiff did exhibit deficits. See, e.g., T. 241 ("appears unsteady on his feet, unable to walk a straight line down the hall").

activities, many of which could be characterized sedentary, are sufficient to overcome Dr. Jenouri's opinion.  See Bleil v. Colvin, No. 3:15-CV-1492 (LEK/ATB), 2017 WL 1214499, at *9 (N.D.N.Y. Mar. 31, 2017).

Given the limited medical information in the present record, particularly with respect to plaintiff's physical functioning, ALJ Fein should have recognized that additional opinion evidence was necessary.  To be sure, it is typically within an ALJ's discretion whether to seek updated or additional medical opinion evidence, however, the nature of plaintiff's alleged impairments—and the lack of sufficient medical opinion evidence regarding plaintiff's physical functioning—created a gap in the evidence that the ALJ did not adequately address in this case.  This gap prevented the ALJ from properly arriving at an RFC supported by substantial evidence.  On the current record, it is unclear how the ALJ could have conducted a reasoned assessment without improperly relying on his own lay opinion in determining plaintiff's RFC.  As a result, remand is required.  See Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) (noting that "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate").

## B. Plaintiff's Remaining Arguments

Plaintiff makes a number of additional arguments in his brief.  See Dkt. No. 14. Because the Court has determined that remand is required, the Court declines to reach a decision on the merits of these remaining arguments.  On remand, and after further development of the record and a new hearing, the ALJ should consider each of the

other alleged errors not discussed in this decision as appropriate.  See, e.g., Casanova v. Saul, No. 3:19-CV-00886 (TOF), 2020 WL 4731352, at *6 (D. Conn. Aug. 14, 2020) ("'upon remand and after a de novo hearing, [the ALJ] shall review this matter in its entirety.'"); Critoph v. Berryhill, No. 1:16-CV-00417 (MAT), 2017 WL 4324688, at *4 (W.D.N.Y. Sept. 28, 2017) ("The ALJ is instructed to consider these additional arguments on remand."); Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13-CV-6844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand") (subsequent history omitted).

## IV.  Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED IN PART**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order.

Dated: September 21st , 2020
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge