UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TRAVIS L.,

                              Plaintiff,

        v.                                               3:19-CV-663 (CFH)

ANDREW M. SAUL, Commissioner of Social Security,

                              Defendant.
_____

**APPEARANCES:**                            **OF COUNSEL:**

Lachman, Gorton Law Firm            PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-6978
Attorneys for plaintiff

Social Security Administration         TIMOTHY SEAN BOLEN, ESQ.
J.F.K. Federal Building, Rm. 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**MEMORANDUM-DECISION & ORDER**

**I. Background**

Plaintiff Travis L. commenced the underlying action challenging a determination by defendant Commissioner of the Social Security Administration ("SSA" or "Commissioner") denying his application for Social Security disability and Supplemental Security Income benefits under the Social Security Act ("Act"). Dkt. No. 1. The Court ruled in plaintiff's favor. Dkt. Nos. 20, 21. Presently pending before the Court are

(1) plaintiff's Motion for Attorney Fees, and (2) Motion for Additional Attorney Fees, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Dkt. Nos. 22, 26. Defendant opposed the Motion for Attorney Fees. Dkt. No. 24. Plaintiff filed a reply. Dkt. No. 25.

In his Motion for Attorney's Fees, counsel requested $5268.30 in fees for 25.5 hours of representation. Dkt. No. 22. In his Second Motion for Attorney Fees, counsel requested an additional $888.38 for 4.3 hours of representation related to responding to defendant's opposition. Dkt. No. 26.

## II. Arguments

In his Motion for Attorney's Fees, plaintiff provides that defendant's position was not substantially justified. Dkt. No. 22 at 1. Plaintiff does not provide additional support for this argument in his initial application for EAJA fees. See Donette H. v Saul, 498 F. Supp.3d 328, 332 (N.D.N.Y. 2020) ("In [his] application, plaintiff does not elaborate upon [his] claim that the government's position was not substantially justified, instead apparently relying upon the circumstance that [he] prevailed. The fact that the government's position in this case was not accepted by the court, however, does not in and of itself dictate a finding, or even raise a presumption, that the government's position was not substantially justified. Plaintiff's argument regarding substantial justification was more fully fleshed out in [his] reply.") (internal citations omitted).

In opposition, the Commissioner argues that his positions at the administrative level and before this Court on appeal were substantially justified. Dkt. No. 24 at 1. The Commissioner does not oppose the amount sought but contends that the defense was

"factually and legally reasonable." Id. More specifically, he asserts the Court had agreed with him that "the ALJ had the discretion to accept in part and reject in part [consultative examiner] Dr. Jenouri's opinion," "Dr. Jenouri's opinion concerning seated activities was vague," "a limitation to seated activities is not necessarily inconsistent with sedentary work," and "acknowledged the decision to obtain additional or new medical evidence is typically reserved to the ALJ." Id. at 3. However, he provides, the Court remanded because it was "unable to conclude that the reasoning provided for rejecting portions of plaintiff's exertional limits was sufficiently compelling to overcome the fact that it was the only medical opinion contained in the record regarding plaintiff's functional restrictions.'" Id. (quoting Travis L., 2020 WL 5633823, at *10). The Commissioner argues that the ALJ's assessment of Dr. Jenouri's opinion "was factually and legally reasonable" as "[t]he Court agreed with the Commissioner that the ALJ could accept the opinion in part and reject it in part[,]" "the ALJ's key finding that Dr. Jenouri's opinion that Plaintiff was limited to 'activities in the seated position' was vague[,]" and "the Commissioner's assertion that even accepting this limitation the opinion was not necessarily inconsistent with a limitation to sedentary work, and hence encompassed by the ALJ's RFC assessment." Id. at 4.

The Commissioner urges the Court to adopt the rationale in Susan N. v. Comm'r of Soc. Sec., No. 5:19-CV-0264 (DEP) (N.D.N.Y. Feb. 6, 2020), wherein Judge Peebles concluded that the Commissioner's position was substantially justified and denied the plaintiff's request for EAJA fees. Dkt. No. 24 at 5-6. The Commissioner contends that these facts are "substantially similar" to Susan N. insofar as "in both cases": "the opinion at issue was the sole on-point opinion, leaving, in the court's view, an evidentiary gap

3

with respect to the disputed limitation"; the Court "desired a better explanation from the ALJ to explain why he discounted the opinion and how he arrived at the RFC assessment"; and "declined to make a finding of disability, instead remanding to the agency for the ALJ to further develop the evidence." Id. at 6.  Finally, the Commissioner contends that the Court's finding "that the evidence in this case was not 'overwhelmingly compelling' to justify setting aside the only medical opinion to speak to the disputed limitation . . . does not make the Commissioner's position unjustified" as (1) "the same consideration did not render the Commissioner's defense unjustified in Susan N.," and (2) "there is a reasonable argument that the 'overwhelmingly compelling' standard has been abrogated by subsequent regulatory changes and is inconsistent with the Social Security Act itself." Dkt. No. 24 at 7.

In reply, plaintiff argues that the Commissioner has not met his burden of demonstrating that his positions are substantially justified.  Dkt. No. 25 at 2.  Plaintiff contends that the Commissioner "focuses only on the reasons this Court gave for remanding the action and fails to address the many arguments it made that were not substantially justified in law and/or fact"; thus, he argues, the Commissioner has waived these arguments.  Id.  Plaintiff argues that the ALJ's position was not substantially justified because "(i) he failed to address the issue of fine visual acuity in the RFC or otherwise in his decision; and (ii) his finding concerning far visual acuity was without any supporting medical basis or opinion and contrary to the sole medical opinion of record from Dr. Jenouri."  Dkt. No. 25 at 3. The Commissioner's argument on appeal – arguing that limitation to plaintiff's fine visual acuity was not "vocationally relevant" to sedentary work – was not substantially justified, plaintiff asserts, because (1) the ALJ concluded

4

that plaintiff could perform work at all exertional levels, and (2) Dr. Jenouri "found limitations to 'fine visual acuity'" which would impact plaintiff's ability to perform sedentary work. Id.

Next, plaintiff argues that the ALJ improperly concluded that "treating source physician assistant Brunt concluded that plaintiff would be off task when, in fact, Brunt never made that assessment and instead indicated that Plaintiff could not work." Dkt. No. 25 at 4. Plaintiff argues that the ALJ misstated the facts, and the Commissioner "never directly addressed the ALJ's falsehood," and, thus, "has not sustained his burden of demonstrating that his actions were substantially justified either at the administrative level or before this Court." Id. at 4.

Plaintiff also points out that the ALJ incorrectly found that there was no documentation of his underdeveloped cerebellum, despite a "March 1997 note as to the small brain stem together with the fact that the Gordon Holmes Syndrome, though not well known, is defined by that[,]" "cognitive decline" which is "a known symptom of Gordon Holmes Syndrome"; and Dr. Jenouri's diagnosis of an underdeveloped cerebellum. Dkt. No. 25 at 4. Plaintiff contends that, on appeal, the Commissioner relies on evidence from outside of the record. Id. at 5.

Plaintiff asserts that the Commissioner "mischaracterizes the Court's decision," insofar as he contends that the Court remanded the case due to the "ALJ's lack of explanation/articulation," arguing that the Court instead remanded because the ALJ "used an improper consideration (the lack of a function-by-function analysis) to discount Dr. Jenouri's opinion," "failed to obtain clarification from Dr. Jenouri or additional or updated medical opinion evidence," and "improperly substituted his lay opinion for that

5

of undisputed medical opinion without satisfying the overwhelmingly compelling standard." Id. at 6, 9. Plaintiff argues that the Commissioner also "ignores" the Court's finding that Dr. Jenouri was the only medical opinion addressing plaintiff's exertional limitations, and by rejecting the opinion, the ALJ's RFC was unsupported by medical opinion evidence. Id. at 9. Finally, plaintiff contends that the Commissioner improperly attempts to argue that the "overwhelmingly compelling" standard has been abrogated. Id. at 12.

### III. Legal Standard

As this Court has set forth,

> To qualify for recovery under the EAJA, a plaintiff must demonstrate that (1) she is a prevailing party[1]; and (2) she is eligible to receive an award. See 28 U.S.C. § 2412(d)(1)(B); see also Smith v. Astrue, No. 10-CV-0053, 2012 WL 3683538, at *1 (N.D.N.Y. Aug. 24, 2012) (Suddaby, C.J.) (citing 28 U.S.C. § 2412(d)(1)(B)); Coughlin v. Astrue, No. 06-CV-0497, 2009 WL 3165744, at *1 (N.D.N.Y. Sept. 28, 2009) (Mordue, J.). In addition, the plaintiff must submit an itemized statement from the attorney appearing on her behalf detailing the time expended and the rates at which the fee request is calculated. Smith, 2012 WL 3683538, at *1; Coughlin, 2009 WL 3165744, at *1. In the event that a plaintiff satisfies these criteria, her EAJA request may nonetheless be denied upon a court's finding the "that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); see also Coughlin, 2009 WL 3165744, at *1.

---

[1] Although "a Social Security claimant [is] not, as a general matter, . . . a prevailing party within the meaning of the EAJA merely because a court ha[s] remanded the action to the agency for further proceedings," Sullivan [v. Hudson], 490 U.S. [877,] 887, "it is within the court's discretion to conclude that representation on remand was necessary to the effectuation of its mandate and to the ultimate vindication of the claimant's rights, and that an award of fees for work performed in the administrative proceedings is therefore proper." Id. at 890. In order to make such an award for representation on remand, a court must also find that "the Secretary's position on judicial review was not substantially justified within the meaning of the EAJA." Id.

MacMillan v. Astrue, No. 1:07-CV-0959 LEK/VEB, 2012 WL 1405777, at *2 (N.D.N.Y. Apr. 23, 2012). The Commissioner does not dispute plaintiff's argument that he is a "prevailing party" under the EAJA.

6

Jeaninne C. v. Saul, No. 3:19-CV-1176 (DEP), 2021 WL 1526049, at *2. (N.D.N.Y. Apr. 19, 2021).

> The issue of the meaning of the term "substantially justified" for purposes of the EAJA, was before the Supreme Court in the seminal case of Pierce v. Underwood, 487 U.S. 552 (1988). In Pierce, the Court settled on a test of reasonableness, concluding that the phrase should be interpreted as meaning "justified to a degree that could satisfy a reasonable person." Id. at 565; accord, Green v. Bowen, 877 F.2d 204, 207 (2d Cir. 1989). In accordance with Pierce, the Second Circuit has further construed the term "substantially justified" to mean as "having a 'reasonable basis in both law and in fact.'" Dunn, 169 F.3d at 786 (quoting Pierce, 487 U.S. at 565); see Ericksson, 557 F.3d at 81; see also HR No. 96-1418, 96th Cong 2d Sess (1980).

Jenny R. R. v. Comm'r of Soc. Sec., No. 5:18-CV-1451 (DEP), 2020 WL 4034839, at *2 (N.D.N.Y. July 17, 2020); see also Cohen, 837 F.2d at 586 ("This circuit repeatedly interpreted the 'substantially justified' standard to be essentially a standard of reasonableness.") (additional citation omitted).

"When analyzing the government's position, both the underlying agency determination affecting the party and the government's litigation strategy in defense of the determination are considered." Miles ex rel. J.M. v. Astrue, 502 F. App'x 59, 60 (2d Cir. 2012) (summary order) (citing 28 U.S.C. § 2412(d)(2)(D), see Smith v. Bowen, 867 F.2d 731, 734 (2d Cir. 1989)); see also Bartha v. Comm'r of Soc. Sec., No. 18-CV-0168-MJP, 2020 WL 2315578, at *1 (W.D.N.Y. May 11, 2020) ("The Commissioner must show that his position was substantially justified as to the issue upon which this Court remanded.") (citing Maxey v. Chater, No. 93-CV-606 (RSP/GJD), 1996 WL 492906, at *3) (N.D.N.Y. Aug. 28, 1996) ("The Commissioner cannot prevail by arguing that she was substantially justified in some of the positions she took if she was not substantially justified on the issue—failure to develop the record—that caused [the district court] to

7

remand this case.")). Courts have held that the substantially justified standard "[i]s intended to caution agencies to carefully evaluate their case and not to pursue those which are weak or tenuous. At the same time, the language of the section protects the government when its case, though not prevailing, has a reasonable basis in law and fact." Knapp v. Astrue, No. 3:10-CV-1218 (MAD/ATB), 2011 WL 4916515, at *1-2 (N.D.N.Y. Oct. 17, 2011) (quoting Cohen v. Bowen, 837 F.2d 582, 585 (2d Cir. 1998)).

The Commissioner bears the burden of demonstrating that his positions are substantially justified. See, e.g., Hale v. Leavitt, 485 F.3d 63, 67 (2d Cir. 2007). "[A] 'strong showing' is required to satisfy this burden." Walker v. Astrue, No. 5:04-CV-891 (NAM/GJD), 2008 WL 4693354, at *2 (N.D.N.Y. Oct. 23, 2008) (quoting Envtl. Defense Fund, Inc. v. Watt, 722 F.2d 1081, 1085 (2d Cir.1983); see also Rosado v. Bowen, 823 F.2d 40, 42 (2d Cir.1987)). "The legislative history of the EAJA indicates that the substantial justification standard 'should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case.'" Davis v. Colvin, No. 6:11-CV-00658 (MAD), 2013 WL 6506466, at *1 (N.D.N.Y. Dec. 11, 2013) (quoting Cohen, 837 F.2d at 585 (citations and internal quotation marks omitted)). "The Commissioner cannot prevail by arguing that he was substantially justified in some of the positions he took if he was not substantially justified on all the positions." Id. (citing Maxey v. Chater, No. 93-CV-606, 1996 WL 492906, at *3 (N.D.N.Y.1996) (additional citation omitted)).

### IV. Discussion[2]

---

[2] Familiarity with the Court's underlying determination is presumed and will not be repeated here beyond the limited extend necessary to complete the substantially justified analysis. Reference is made to the

The Court finds that the Commissioner's has not met his burden of proving that his position was substantially justified. Although the Commissioner points to the fact that the Court agreed with the ALJ that Dr. Jenouri's opinion regarding plaintiff's seated abilities/limitations was vague, that an ALJ is not required to accept the entirety of a medical opinion, or give special weight to the opinion of a consultative examiner, Dkt. No. 20 at 18-19, that the Court acknowledged these overarching points of settled law does not require a conclusion that the Commissioner's position was substantially justified. Indeed, the Court also noted that "'[a]n ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.'" Dkt. No. 20 at 16-17 (quoting Quinto v. Berryhill, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). The Court continued to conclude that, despite agreeing that Dr. Jenouri's opinion was vague, it was the "only opinion in the medical record that addressed plaintiff's exertional limitations"; thus, when he rejected that opinion without seeking clarification from Dr. Jenouri or ordering a new consultative opinion, the ALJ's RFC was "unsupported by any medical opinion evidence." Dkt. No. 20 at 19. The Court noted further that the medical evidence regarding plaintiff's exertional limitations was "extremely sparse" and rejected the Commissioner's suggestion that Dr. Jenouri's opinion "was 'but one piece of a voluminous medical history and record." Dkt. No. 20 at 20 (citing Dkt. No. 17 at 10, quoting Alvarez v. Colin, No. 15-CV-6193 (JWF), 2016 WL 5791205, at *9 (W.D.N.Y. Sept. 30, 2016). Thereafter, the Court explicitly relied on Giddings v. AStrue, 333 F.

---

Court's Memorandum-Decision & Order granting plaintiff's motion for judgment on the pleadings in part and reversing and remanding the determination of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

9

App'x 649, 652 (2d Cir. 2009), to conclude that the record was not "overwhelmingly compelling" such that the ALJ could base his RFC "on evidence other than medical opinions – such as treatment notes and activities of daily living." Dkt. No. 20 at 20. Specifically, the Court noted that the ALJ rejected Dr. Jenouri's opinion due to plaintiff's activities of daily living, finding them inconsistent with Dr. Jenouri's opined limitations. Dkt. No. 20 at 20. The Court then held that plaintiff's activities of daily living, "many of which could be characterized as sedentary" could not alone amount to overwhelmingly compelling evidence sufficient to "overcome Dr. Jenouri's opinion." Id. at 20-21. The Court concluded that record was absent of support for plaintiff's exertional limitations and his activities of daily living and treatment notes did not provide sufficient support to show plaintiff could perform the activities set forth in the ALJ's RFC.

The Commissioner urges the undersigned to follow Susan N., 5:19-CV-0264 (DEP) (N.D.N.Y. May 15, 2020), dkt. no. 24-1, where Judge Peebles denied plaintiff's application for EAJA fees. Dkt. No. 24 at 4-5. The Court declines to adopt its holding for several reasons. Importantly, facts between Susan N. and this case, while similar from bird's eye view, also diverge in several respects when read more closely. In finding the Commissioner's position substantially justified, Susan N. noted that the case did not involve improper rejection of a treating source opinion, "the circumstance where the opinions of a consultative consultant were elevated over those of a treating source" but "a case in which the sole medical opinion in the record, rendered by a consultative examiner, was partially rejected as vague and inconsistent with the plaintiff's medical records." Dkt. No. 24-1 at 8. Here, however, although this case also involves the partial rejection of a consultative examiner's opinion who was the only medical opinion to

speak to the limitation in question and whose opinion the ALJ described as vague, unlike in Susan N., in reviewing the appeal, the Court did not explicitly note that the case was "close" or involved an issue "on which reasonable minds could differ." Id. Further, despite describing the consultative examiner's opinion as vague, Judge Peebles also noted that the "moderate limitation" the consultative examiner reached was supported by her examination. Id.

In the instant case, the undersigned noted that Dr. Jenouri's opinion relating to performing activities in a seated position did not make clear "whether the restriction to seated activities necessarily implies that plaintiff is unable to stand or walk during the work day," which, if that was the intention, would "[r]esult in the erosion of the occupational base and, consequently, the ability to perform sedentary work. Dkt. No. 28 at 18. Despite agreeing on the vagueness of Dr. Jenouri's opinion, the Court emphasized its finding that Dr. Jenouri's opinion as to "activities in the seated position" was the only medical opinion addressing plaintiff's exertional limitations, and the ALJ's failure to "seek clarification from Dr. Jenouri or otherwise order a new consultative examination . . . left the ALJ's RFC assessment unsupported by any medical opinion evidence." Dkt. No. 20 at 19. The undersigned cannot conclude that an RFC that contains a limitation or ability unsupported by medical opinion evidence can be said to have a "reasonable basis in both law and in fact." Knapp, 2011 WL 4916515, at *1-2.

Further, in Susan N., although acknowledging that the ALJ was required to explain how the plaintiff's activities of daily living were inconsistent with her limitations or abilities, Judge Peebles noted that plaintiff "has a fairly active life and robust activities of daily living." Id. Here, plaintiff appears to have less active activities of daily living. The

11

Court was "not persuaded that plaintiff's reported activities, many of which could be characterized as sedentary, are sufficient to overcome Dr. Jenouri's opinion." Dkt. No. 20 at 20-21. Significantly, in this case, the Court remanded not just because it "desired a better explanation from the ALJ to explain why he discounted the opinion and how he arrived at the RFC assessment." Dkt. No. 24 at 6. Although correct, this statement deemphasizes the Court's finding that without this explanation, the ALJ's RFC is unsupported or the basis of its support is unclear. Dkt. No. 20 at 21. The Court concluded that with the limited medical record "particularly with respect to plaintiff's physical functioning, ALJ Fein should have recognized that additional opinion evidence was necessary." Id. Thus, the Court declines to follow Susan N. due to these distinctions between the cases.[3]

In granting a plaintiff's application for an EAJA award, the Western District of New York noted, "[a]bundant case law since at least 2016 in this District has held that an A.L.J. may not interpret raw medical data to arrive at a residual functional capacity, unless "the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" Bartha v. Comm'r of Soc. Sec., No. 18-CV-0168-(MJP), 2020 WL 2315578, at *2 (W.D.N.Y. May 11, 2020) (internal citations omitted). The Court believes that this is similarly well-settled law in this District. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks omitted) (citations omitted) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before

---

[3] Although the opinion is well-reasoned, it is also noted that Susan N. is not considered precedential. See generally 18-134 Moore's Federal Practice - Civil § 134.02.

him."). Even assuming, arguendo, the Court agrees that the Commissioner was substantially justified in some of the positions he took, the Court declines to conclude that he was substantially justified with regard to his RFC determination – the matter upon which this Court remanded – as it was unclear whether it was supported by any medical evidence. Thus, the Court concludes that the Commissioner failed to meet his burden of demonstrating that his positions are substantially justified. See Maxey, 1996 WL 492906, at *3 ("The Commissioner cannot prevail by arguing that she was substantially justified in some of the positions she took if she was not substantially justified on the issue—failure to develop the record—that caused [the district court] to remand this case."). The Court similarly finds that the ALJ's failure to seek clarification or additional evidence was also not substantially justified as no reasonable person could conclude that the record adequately spoke to plaintiff's seated limitations or abilities. See Walker v. Astrue, No. 5:04-CV-891(NAM/GJD), 2008 WL 4693354, at *3 (N.D.N.Y. Oct. 23, 2008) ("In an EAJA fee motion, the fact that the ALJ failed to develop the record is not an issue for the Court to address. Rather, the Court must determine whether a reasonable person could have regarded the record as an adequate one on which to base a decision.") (internal citations omitted).

  Accordingly, because, in rejecting Dr. Jenouri's opinion, it is unclear whether the ALJ relied on any medical opinion in reaching an RFC regarding plaintiff's siting abilities and limitations, the undersigned cannot conclude that ALJ's RFC or his decision not to obtain additional opinion evidence in the face of this gap in the record was reasonable, nor is the Commissioner's position in defending the ALJ's unsupported – or unclearly supported – RFC before this Court. See Dkt. No. 20 at 21.

Although the Commissioner suggests that the "overwhelmingly compelling" standard has been abrogated or is inconsistent with the Social Security Act, the Court applied this standard in reviewing this Social Security Appeal and there has been no precedent from the Second Circuit unambiguously holding this standard is no longer good law. As in Esther M. v. Saul, a case both parties cite, dkt. no. 24 at 7; dkt. no. 25 at 13, Judge Peebles held that it is not for him to conclude whether the Second Circuit has overruled the overwhelmingly compelling standard. See Esther M. v. Saul, No. 3:19-CV-1163 (DEP) at 13-14, (N.D.N.Y. Nov. 30, 2020); dkt. no. 24-3. The undersigned agrees with Judge Peebles' rationale on this point. Thus, to the extent the Commissioner seeks to contend that the overwhelmingly compelling standard has been abrogated by the Second Circuit, the Court declines to find that his positions were substantially justified as the undersigned cannot conclusively conclude that this standard has indeed been abrogated.

As to the amount of the fee requests, the Commissioner does not oppose the amount. Dkt. No. 24 at 1 n.1.[4] Plaintiff's attorney provides that his work on the appeal totaled 25.5 hours, and his work in defending his motion for attorney's fees totaled 4.3 hours. Dkt. Nos. 22, 26. "District courts in the Second Circuit have held that, on average, an attorney spends twenty to forty hours on routine social security cases." Cocozziello v. Colvin, No. 3:13-CV-1383 MAD/ATB, 2014 WL 5149220, at *2 (N.D.N.Y. Oct. 14, 2014) (citing Cruz v. Apfel, 48 F.Supp.2d 226, 231 (E.D.N.Y.1999) (additional citations omitted)). The hours counsel spent on this appeal fall within that range. "Considering that the time spent is at the low end of the generally accepted average and

---

[4] The Commissioner did not respond to plaintiff's request for additional attorney fees.

14

because the Government has not taken issue with the alleged hours worked or hourly rate, the Court will not engage in an analysis of the time spent or the billing rate." Id.

Finally, plaintiff's counsel appends an "Assignment of Attorney's Fees" form to his motion. See Dkt. No. 22-1. The form provides, "[i]f any checks are made payable to me for the attorney fees, I hereby authorize my attorney to endorse said checks on my behalf and deposit the same in his account." Id. The EAJA fee is to be made payable to plaintiff, but the Commissioner shall "mail the check to Plaintiff's attorney in recognition of the agreement between counsel and client." Cocozziello, 2014 WL 5149220, at *3 (citations omitted); Dkt. No. 24 at 1 n.1.[5] Accordingly, the Court directs that the EAJA fees shall be made payable to plaintiff, but mailed to plaintiff's counsel for plaintiff's endorsement.

## V. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby:

---

[5]
>    The fact that the [EAJA] awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not," however, "establish that the statute 'awards' the fees directly to the attorney." Astrue v. Ratliff, 560 U.S. 586, 593 (2010). Instead, the EAJA " 'awards' the fees to the litigant, and thus subjects them to a federal administrative offset if the litigant has outstanding federal debts." Id. Accordingly, consistent with the application of Ratliff within this Circuit, "'the name on the check must be plaintiff's and not her attorney's.'" Manning, 2011 WL 6842617, at *2 (quoting Scott v. Astrue, No. 08-CV-910A, 2011 WL 32544, *3 (W.D.N.Y. Jan. 5, 2011)). In light of this authority, the Court directs that the check shall be made payable to Plaintiff, but that the Commissioner mail the check to Plaintiff's attorney in recognition of the agreement between counsel and client. See Mirabito v. Comm'r of Soc. Sec., No. 5:13-cv-462, 2014 WL 1341928, *2 n. 2 (N.D.N.Y. Apr. 4, 2014) (citation omitted).

Cocozziello v. Colvin, No. 3:13-CV-1383 (MAD/ATB), 2014 WL 5149220, at *3 (N.D.N.Y. Oct. 14, 2014).

15

**ORDERED**, that plaintiff's Motion for EAJA fees and Motion for Additional Attorney Fees (Dkt. Nos. 22, 26), pursuant to 28 U.S.C. § 2412(d), are **GRANTED** in the amount of $6,156.68; and it is further

**ORDERED**, that the check is to be made payable to plaintiff, and the Commissioner shall mail the check to plaintiff's attorney as set forth above; and it is further

**ORDERED**, that the Clerk of the Court serve the parties with his Memorandum-Decision & Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: June 23, 2021
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge